IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| ADVANCED DYNAMIC INTERFACES LLC, | ) ) ) | |
| Plaintiff, | ) | |
| v. | ) | C.A. No. 12-963 (GMS) |
| | ) | |
| ADERAS INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

**OPENING BRIEF IN SUPPORT OF**
**ORACLE'S MOTION TO INTERVENE AND FOR A STAY**

<div style="margin-left:50%">

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
skraftschik@mnat.com
  *Attorneys for Oracle Corporation*
  *and Oracle America, Inc.*

</div>

OF COUNSEL:

Jared Bobrow
Sonal N. Mehta
Andrew Perito
Justin M. Lee
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

September 20, 2012

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... ii

I.    NATURE AND STAGE OF THE PROCEEDINGS ........................................1

II.   SUMMARY OF ARGUMENT ........................................................................2

III.  ORACLE SHOULD BE PERMITTED TO INTERVENE TO PROTECT
      ITS PRODUCT AND ITS CUSTOMERS FROM ADI'S MERITLESS
      INFRINGEMENT CLAIMS .............................................................................3

      A.   ORACLE SHOULD BE PERMITTED TO INTERVENE AS OF
           RIGHT ..................................................................................................4

           1.   Oracle's Motion To Intervene Is Timely ....................................4

           2.   Oracle Has A Compelling Interest In This Litigation And
                Its Stay .........................................................................................5

           3.   Oracle's Legal And Economic Interests Are Impacted By
                This Action....................................................................................6

           4.   Oracle's Interests Are Not Adequately Represented By The
                Existing Parties .............................................................................7

      B.   AT A MINIMUM, THE COURT SHOULD GRANT ORACLE'S
           REQUEST FOR PERMISSIVE INTERVENTION ...............................9

IV.   THIS CASE SHOULD BE STAYED PENDING ADJUDICATION OF
      ORACLE'S DECLARATORY JUDGMENT ACTION...................................10

      A.   COURTS REGULARLY STAY CUSTOMER SUITS TO
           ALLOW RESOLUTION OF A MANUFACTURER'S
           DECLARATORY JUDGMENT ACTION .........................................11

      B.   ORACLE'S DECLARATORY JUDGMENT CASE IS THE
           RIGHT CASE FOR ADJUDICATION OF  ADI'S CLAIMS
           AGAINST ORACLE'S APEX PRODUCTS .......................................14

           1.   Staying This Case Until The Declaratory Judgment Action
                Is Resolved Will Streamline This Case And Any Trial.............14

           2.   A Stay Will Not Unduly Prejudice Plaintiff ...............................16

           3.   A Stay Is Warranted Because This Case Is In Its Infancy .........16

V.    CONCLUSION................................................................................................17

TABLE OF AUTHORITIES

Page(s)

CASES

*Arris Grp. Inc. v. British Telecomms. PLC*,
  639 F.3d 1368 (Fed. Cir. 2011).........................................................................7

*Codex Corp. v. Milgo Electronics Corp.*,
  553 F.2d 735 (1st Cir. 1977).............................................................................12

*Commissariat A L'Energie Atomique v. Tottori Sanyo Electronic Co., Ltd.*,
  2004 WL 1554382 (D. Del. May 13, 2004)..............................................8, 13, 14

*Delphi Corp. v. Automotive Tech. Int'l, Inc.*,
  No. 08-11048, 2008 WL 2941116 (E.D. Mich. Jul. 25, 2008) ......................3, 8, 15

*Deutschman v. Beneficial Corp.*,
  132 F.R.D. 359 (D. Del. 1990) ..........................................................................9

*Enzo Biochem, Inc. v. Calgene, Inc.*,
  No. 93–110, 1993 WL 266518 (D. Del. May 18, 1993)......................................12

*Glenayre Electronics, Inc. v. Jackson*,
  443 F.3d 851 (Fed. Cir. 2006)...........................................................................15

*HBB Ltd. P'ship v. Ford Motor Co.*,
  1992 WL 348870 (N.D. Ill. 1992) .....................................................................10

*Honeywell Int'l Inc. v. Audiovox Comms. Corp.*,
  Case Nos. 04-1337, -1338, -1536, 2005 WL 2465898 (D. Del. May 18, 2005) ............. Passim

*Kahn v. Gen. Motors, Corp.*,
  889 F.2d 1078 (Fed. Cir. 1989)..........................................................................2

*Katz v. Lear Siegler, Inc.*,
  909 F.2d 1459 (Fed. Cir. 1990)...........................................................2, 5, 12, 13

*Kleissler v. U.S. Forest Serv.*,
  157 F.3d 964 (3d Cir. 1998)........................................................................4, 7, 8

*Monolithic Power Sys., Inc. v. O2 Micro Int'l Ltd.*,
  2008 WL 3266647 (N.D. Cal. Aug. 6, 2008) .....................................................6

*Pragmatus Telecom, LLC v. Advanced Store Co.*,
  No. 12-088, 2012 WL 2803695 (D. Del. July 10, 2012) ............................... Passim

*Ricoh Co. Ltd. v. Aeroflex Inc.*,
   279 F. Supp. 2d 554 (D. Del. 2003)................................................................2, 5, 13

*Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*,
   882 F. Supp. 359 (D. Del. 1994).......................................................................11

*UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*,
   853 F. Supp. 800 (D. Del. 1994).....................................................................9, 10

*WS Packaging Grp., Inc. v. Global Commerce Grp., LLC*,
   505 F. Supp. 2d 561 (E.D. Wisc. 2007)...............................................................3, 6

## RULES AND STATUTES

Fed. R. Civ. P. 16................................................................................................17

Fed. R. Civ. P. 24..............................................................................................4, 9

## I.     NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement suit brought by Plaintiff Advanced Dynamic Interfaces LLC ("ADI").  ADI claims to be a Texas entity whose sole business appears to be the monetization of patents through enforcement and litigation.  Here, ADI alleges that Oracle Corporation's ("Oracle") Application Express ("APEX") software, and products and services based on or using APEX, infringe U.S. Patent Nos. 7,062,502 and 7,401,094 ("the Patents-in-Suit").  Oracle designed and developed APEX as a rapid web application development tool for the Oracle database products, the world's leading commercial relational databases.  Some of Oracle's customers use APEX to create applications for Oracle databases.  Although the subject of the suit is Oracle's APEX products, ADI elected to file this "customer suit" in this Court against twenty different Oracle defendants,[1] rather than bringing suit against Oracle itself.

When Oracle learned of the suit and received indemnity requests, it promptly brought a declaratory judgment action against ADI before this Court.  *See* C.A. No. 12-1154, D.I. 1, Complaint.  Oracle's declaratory judgment suit seeks to remove the shadow cast by ADI's infringement allegation over APEX, including its customers' use of APEX, development of software using APEX, and provision of services relating to APEX.

Oracle has moved to intervene for purposes of seeking to stay this customer suit in favor of its declaratory judgment suit.

---

[1]    The named defendants ("Customers") are the following:  Aderas Inc., Apps Associates LLC, Burleson Enterprises Inc., C2 Consulting Inc., C3 Business Solutions Inc., Centroid Systems Inc., Enkitec Group LLC, GB Advisors LLC, The James Group LLC, JSA2 Solutions LLC, Konoso LLC, Linsonic LLC, Mauli Systems Inc., Mythics Inc., Niantic Systems LLC, Penwick Realtime Systems Inc., Rolta-Tusc Inc., Skillbuilders Inc., Sumner Technologies LLC and Vista Technology Services Inc.  D.I. 1, Complaint ¶¶ 3-22.  ADI filed a Notice of Voluntary Dismissal Without Prejudice of GB Advisors LLC on August 7, 2012.  D.I. 6.

II.   <u>**SUMMARY OF ARGUMENT**</u>

Oracle's APEX products are the target of this case. Despite this, ADI made a considered and calculated decision not to include Oracle in this lawsuit. This approach has been used by some entities whose business is patent enforcement to extract settlements from customers (particularly small customers) who are ill-suited to defending a patent litigation based on their use of someone else's product, while excluding from the litigation the company with the most interest in the accused product and knowledge of the technology. *See Kahn v. Gen. Motors, Corp.*, 889 F.2d 1078, 1081 (Fed. Cir. 1989); *Ricoh Co. Ltd. v. Aeroflex Inc.*, 279 F. Supp. 2d 554, 557 (D. Del. 2003).

In such situations, "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz v. Lear Siegler, Inc.*, 909 F.2d 1459, 1464 (Fed. Cir. 1990) (internal citation omitted). Accordingly, where a company like Oracle seeks to protect its products and customers from what it believes are wrongful allegations of infringement, and does so promptly, the law affords it the procedural vehicle to do just that.

Here, Oracle has filed a declaratory judgment action to establish that Oracle's APEX products do not infringe the Patents-in-Suit and that those patents are invalid. Oracle respectfully submits that, as a matter of sensible, efficient and fair case management, this customer suit should be stayed in favor of Oracle's declaratory judgment suit.

Oracle is the most natural challenger to the Patents-in-Suit. Oracle is the party with the most knowledge and information about the APEX products, the party with the greatest interest in those products, and the party best situated to defend against ADI's allegations. In short, the declaratory judgment action is the most appropriate case for resolving this patent suit

regarding Oracle's APEX products.  *See, e.g., Pragmatus Telecom, LLC v. Advanced Store Co*., No. 12-088, 2012 WL 2803695, at *4 (D. Del. July 10, 2012) (acknowledging a preference for a manufacturer's declaratory judgment action over a customer suit based on the recognition that, in reality, the manufacturer is the true defendant in the customer suit); *see also, e.g., Delphi Corp. v. Automotive Tech. Int'l, Inc.*, No. 08-11048, 2008 WL 2941116, *5 (E.D. Mich. Jul. 25, 2008) ("[S]ignificant policy considerations favor global resolution of ATI's dispute with the actual source of the allegedly infringing products."); *WS Packaging Grp., Inc. v. Global Commerce Grp., LLC*, 505 F. Supp. 2d 561, 566 (E.D. Wisc. 2007) ("A favorable declaratory judgment would provide WS [the manufacturer] relief, for it would clear the air as to whether WS's game pieces infringe the '062 patent.  Without such clarification, Global [the patentee] remains free to 'attempt[] extra-judicial patent enforcement with scare-the customer-and-run tactics that infect the competitive environment of the business community with uncertainty and insecurity.'").

This case should be stayed and Oracle's case should go forward.

## III.   ORACLE SHOULD BE PERMITTED TO INTERVENE TO PROTECT ITS PRODUCT AND ITS CUSTOMERS FROM ADI'S MERITLESS INFRINGEMENT CLAIMS

As discussed above, Oracle is the developer, designer and licensor of the APEX software that is accused of infringing the Patents-in-Suit.  D.I. 1, Complaint ¶ 27 ("infringement … arise[s], at least in part, out of the same series of occurrences relating to the use of the same accused products or processes, including but not limited to [Oracle] Application Express ('APEX') and products and services based on or using APEX."); *id.* ¶¶ 32, 43 ("Accused Services and Products include, but are not limited to, automatically generating a graphical user interface for a relational database using APEX; applications developed using APEX or that utilize APEX in their operation; and APEX"); *see also* Declaration of Joel Kallman in Support of

Oracle Systems, Inc.'s Motion to Intervene and to Stay Case ("Kallman Decl.") ¶¶ 1-2 (Oracle is

developer, designer and licensor of APEX).  Despite this, Oracle was not named as a defendant

in this case.  Pursuant to Federal Rule of Civil Procedure 24, Oracle has moved to intervene as of

right and by permission, to seek to stay this case and protect its interest in the APEX product and

to protect its customers from ADI's unmeritorious claims.  *See* Fed. R. Civ. P. 24(a)(2); Fed. R.

Civ. P. 24(b)(1).

### A.      Oracle Should Be Permitted To Intervene As Of Right

The Third Circuit has "interpreted Rule 24(a)(2) to require proof of four elements

from the applicant seeking intervention as of right: first, a timely application for leave to

intervene; second, a sufficient interest in the litigation; third, a threat that the interest will be

impaired or affected, as a practical matter, by the disposition of the action; and fourth, inadequate

representation of the prospective intervenor's interest by existing parties to the litigation."

*Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998).  As set forth below, each of

these factors demonstrates that Oracle has a right to intervene under Fed. R. Civ. P. 24(a).

### 1.      Oracle's Motion To Intervene Is Timely

Oracle's motion is timely.  ADI filed its complaint on July 20, 2012.  D.I. 1,

Complaint.  After learning of ADI's lawsuit, investigating the matter, and receiving requests for

indemnification from its customers, Oracle filed its complaint for declaratory judgment before

this Court.  Exh. 1 [Oracle's DJ Complaint].  No scheduling conference has taken place, no

discovery has occurred, and no trial date has been set.  Therefore, Oracle's intervention will not

delay this case or prejudice any of the parties.  *See, e.g.*, *Honeywell Int'l Inc. v. Audiovox*

*Comms. Corp.*, Case Nos. 04-1337, -1338, -1536, 2005 WL 2465898, at *4 (D. Del. May 18,

2005) (finding motion to intervene timely because "discovery has not even begun in the case and

- 4 -

case management issues are only now being addressed").  To the contrary, Oracle's prompt

motion to intervene is likely to streamline these proceedings and *minimize* prejudice to the

parties, as set forth below.

   **2.**  **Oracle Has A Compelling Interest In This Litigation And Its Stay**

   In patent infringement actions, the manufacturer of an accused product is

routinely recognized as being the "real party in interest."  *Katz*, 909 F.2d at 1464 ("[I]n reality,

the manufacturer is the true defendant in the customer suit").  As the designer, developer and

licensor of the accused APEX products at the heart of this case, there is no question that Oracle

has a compelling interest in its adjudication and outcome.  *See, e.g., Honeywell*, 2005 WL

2465898, at *4 (finding a "manufacturer of the product component which is at the heart of these

cases … has a compelling interest"); *Ricoh*, 279 F. Supp. 2d at 557 ("[M]anufacturer is presumed

to have a greater interest in defending its actions against charges of patent infringement.").  Not

only would any adverse findings concerning Oracle's APEX product negatively impact Oracle's

sales and services related to APEX products to the customers in this suit, but it would adversely

impact Oracle's sales and services related to APEX products more generally.  Indeed, just the

pendency of this action has significant impact on Oracle's interests.  The mere fact of ADI's

claims creates the specter of liability (albeit unfounded) over Oracle's products—it is common

sense that customers will think twice before purchasing products that are the subject of

infringement allegations, especially where those allegations have exposed other customers to a

customer suit.  Thus, Oracle's interest lies in protecting its current and future customers from

ADI's allegations and in clearing the cloud that hangs over its products.

   This interest alone would be sufficient to support Oracle's intervention in the

present case.  But Oracle's interest goes further.  Oracle has an immediate financial stake in this

litigation and in its stay.  Oracle received requests for indemnification in relation to this lawsuit.

Kallman Decl. ¶¶ 4-5.  These requests implicate legal fees for the defense against ADI's claims,

and if the APEX products were found to infringe the Patents-in-Suit, potentially any judgment

against them.  They thus create a direct and near-term economic interest in this litigation.  *See,*

*e.g., WS Packaging*, 505 F. Supp. 2d at 566 (finding manufacturer had a legal interest in case

brought against its customers where the manufacturer owes an obligation of indemnity, for

example, by indemnification contract or product warranty, to the customer); *see also Monolithic*

*Power Sys., Inc. v. O2 Micro Int'l Ltd.*, 2008 WL 3266647, at *3 (N.D. Cal. Aug. 6, 2008)

(finding declaratory judgment jurisdiction existed where the manufacturer's legal interests would

be harmed by, among other things, "be[ing] forced to indemnify its customers for any losses they

incur in an infringement suit brought against them by" the patentee).

### 3. Oracle's Legal And Economic Interests Are Impacted By This Action

For many of the same reasons, Oracle "can rightly claim that its interests will be

impaired or affected, as a practical matter, by the disposition of the action, unless it is involved in

the case directly and able to make its positions known." *Honeywell*, 2005 WL 2465898, at *4.

Indeed, the fact that ADI has chosen to target its infringement claims against Oracle's APEX

products makes it inevitable that Oracle's legal and economic interests will be impacted by

ADI's claims.

Beyond the interests identified above, the possibility of adverse findings absent a

stay poses a serious threat to Oracle's legal and economic interests.  The specific allegations in

ADI's complaint regarding APEX products constitute an implicit assertion that Oracle has

indirectly infringed the Patents-in-Suit.  In ADI's claims for indirect infringement by the

Customers, it contends that the accused products—which ADI defines to include APEX, D.I. 1,

Complaint ¶¶ 32, 43—"constitute a material part of the claimed invention," "were made or especially adapted for use in an infringement of the [Patents-in-Suit] and have no substantial non-infringing uses," *id*. ¶¶ 36, 47.  The Federal Circuit has recognized that such claims as to customers' infringement based on the use of a product may create an Article III controversy between a patentee and a supplier of the product.  *Arris Grp. Inc. v. British Telecomms. PLC*, 639 F.3d 1368, 1375 (Fed. Cir. 2011) ("[W]here a patent holder accuses customers of direct infringement based on the sale or use of a supplier's equipment, the supplier has standing to commence a declaratory judgment action if … there is a controversy between the patentee and the supplier as to the supplier's liability for induced or contributory infringement based on the alleged acts of direct infringement by its customers.").  Accordingly, ADI's allegations affect Oracle's legal and economic interests not only because of their effects on Oracle's customers, but also because they implicitly assert that Oracle has itself indirectly infringed the Patents-in-Suit, creating a justiciable controversy between ADI and Oracle.

### 4.    Oracle's Interests Are Not Adequately Represented By The Existing Parties

With respect to the final factor, the law is clear that a party seeking to intervene as of right need not show that the existing parties will necessarily provide inadequate representation of the intervening party's interests, but rather that there is a real possibility that the representation will not be adequate.  *See Kleissler*, 157 F.3d at 974 (noting that an intervenor need only show that representation may be inadequate, not that it is, in fact, inadequate).  Here, there is little question that Oracle's interests cannot be adequately represented by the nineteen Customers in the present suit, and that its interests will be best protected if this case is stayed in favor of the declaratory judgment suit.

At the outset, Oracle is uniquely situated to defend its product line against ADI's infringement claim.  As the sole designer and developer of APEX, Oracle has the deepest and most expansive understanding of the technology and functionality of the APEX products and product developed using APEX.  *See* Kallman Decl. ¶¶ 2-3.  Oracle also possesses the most relevant information about the structure and operation of the APEX products, including relevant documents and the individuals who designed and developed the software.  *Id.*.

In contrast, the Customers did not design or develop APEX and lack the same understanding of how the APEX products work.  *See id.* ¶ 3.  This lack of understanding and information may leave them unable to fully defend Oracle's APEX products against ADI's infringement claims if this case were to go forward.  For that reason, Courts have recognized that the information imbalance between manufacturer and customer is sufficient to create a potential for inadequate representation that warrants intervention.[2]  *See, e.g., Kleissler*, 157 F.3d at 974 (explaining that intervention is favored where "[t]he early presence of intervenors may serve to prevent errors from creeping into the proceedings [and] clarify some issues."); *Delphi*, 2008 WL 2941116, at *5 (noting that the manufacturer "controlled the design and production and therefore is in the best position to defend its own products"); *Honeywell*, 2005 WL 2465898, at *4 (finding that "because [the manufacturer] is uniquely situated to understand and defend its own products, its interests are not adequately represented by existing parties [the customers] to the litigation"); *Commissariat A L'Energie Atomique v. Tottori Sanyo Electronic Co., Ltd.*, 2004 WL 1554382, at

---

[2]   Beyond this, there is of course a risk that the Customers may not be able to mount non-infringement and patent invalidity defenses or arguments to the full extent Oracle will be able to in its declaratory judgment case.  There may be theories or facts that are unique to Oracle as the developer of the product that could not readily be raised in an action where Oracle is not a party, such as invalidity defenses based on early versions of—or predecessors to—the accused products that the Customers may not have purchased, used or known about.

*3 (D. Del. May 13, 2004) ("Because the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of [the patentee's] asserted patents.").  As such, absent intervention and stay, the claims against Oracle's APEX products will be adjudicated against the wrong defendants.

In sum, Oracle's APEX products rest at the very heart of this litigation.  The principles governing intervention as of right weigh heavily in favor of allowing Oracle to intervene in this case to seek a stay to protect its own interests in its products and defend its customers against claims directed to those products.

B.     **At A Minimum, The Court Should Grant Oracle's Request For Permissive Intervention**

Even if the Court finds Oracle is not entitled to intervene as of right, Oracle meets the requirements for permissive intervention.  A party may permissively intervene pursuant to Fed. R. Civ. P. 24(b) if: (1) the application is timely; (2) the applicant's claim and the main action have a question of law or fact in common; and (3) the intervention will not unduly delay or prejudice the adjudication of the rights of the original parties.  *See, e.g.*, *Deutschman v. Beneficial Corp.*, 132 F.R.D. 359, 382 (D. Del. 1990).  For the same reasons as above, each of these criteria is met here.

There is no question that Oracle's motion is timely and that Oracle's intervention at this stage will not unduly delay or prejudice the adjudication of the rights of the original parties.  Oracle has filed its motion at the very outset of this case.  *UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*, 853 F. Supp. 800, 807 (D. Del. 1994), *rev'd on other grounds*, *UPS Worldwide Forwarding, Inc. v. U.S. Postal Service*, 66 F.3d 621 (3d Cir. 1995) (finding motion to intervene imposed no prejudice on the parties where "filed less than three months after the suit was initiated").  In addition, as discussed above, this case and Oracle's declaratory judgment

- 9 -

action share common questions of law and fact.  ADI alleges that each of the defendants

infringes the Patents-in-Suit "by providing services and using products" including "automatically

generating a graphical user interface for a relational database using APEX; applications

developed using APEX or that utilize APEX in their operation; and APEX."  D.I. 1, Complaint

¶¶ 32, 43.  Indeed, ADI asserts that joinder of the Customers in this action is appropriate based

on its allegation that "infringement … arise[s], at least in part, out of the same series of

occurrences relating to the use of the same accused products or processes, including but not

limited to Application Express ("APEX") and products and services based on or using APEX."

*Id.* ¶ 27.  Oracle vigorously disputes that those products and services infringe the Patents-in-Suit

and that the Patents-in-Suit are valid, and intends to establish non-infringement and invalidity in

its declaratory judgment suit.  Therefore, Oracle has "a legal interest which is clearly related, if

not identical, to the main action."  *UPS Worldwide.*, 853 F. Supp. at 807.

          Under these circumstances, "[p]ermitting the intervention by a manufacturer in a

patent infringement case against its customers is well supported by case law" and in fact.  *HBB*

*Ltd. P'ship v. Ford Motor Co.*, 1992 WL 348870, at *2 (N.D. Ill. 1992).  For these reasons,

Oracle requests the Court grant Oracle's motion to intervene for purposes of seeking stay.[3]

## IV.   THIS CASE SHOULD BE STAYED PENDING ADJUDICATION OF ORACLE'S DECLARATORY JUDGMENT ACTION

          Oracle seeks a stay of this action to protect its APEX product and its customers

from unmeritorious claims and to remove the shadow that those claims have cast over its

---

[3]   For the same reasons, if Oracle's motion to stay were to be denied, Oracle requests that this Court treat this motion as one for purposes of intervention in the case more broadly.

products. As set forth below, numerous pragmatic and equitable reasons justify a stay of this customer suit pending resolution of Oracle's declaratory judgment action.

### A. Courts Regularly Stay Customer Suits To Allow Resolution Of A Manufacturer's Declaratory Judgment Action

In general, "[w]hen considering a motion to stay, the court considers the following factors: (1) whether a stay would unduly prejudice or present a clear tactical disadvantage to the non-moving party; (2) whether a stay will simplify the issues and trial of the case; (3) whether discovery is completed; and (4) whether a trial date has been set." *Honeywell*, 2005 WL 2465898, at *2.

These factors have routinely been found to support a stay, even where the first-filed action is stayed in favor of allowing a second-filed action to proceed. In making that determination, Courts have rejected a rigid rule in favor of a flexible approach. *See Pragmatus*, 2012 WL 2803695, at *4 ("The court has the discretion to stay a case if the interests of justice so require.") (internal quotation marks omitted); *see also Tuff Torq Corp. v. Hydro-Gear Ltd. P'ship*, 882 F. Supp. 359, 364 (D. Del. 1994) ("District courts have always had discretion given appropriate circumstances justifying departure from the first-filed rule."). Applying this flexible approach, the central question is whether, under the circumstances of a particular case, it makes more sense—for the parties and the judicial system—for the second-filed action to go forward ahead of the first-filed action.

For example, in the recent *Pragmatus* decision, the Court stayed ten first-filed software customer infringement actions in favor of allowing a subsequent declaratory judgment action filed by the software supplier to proceed first. *Pragmatus*, 2012 WL 2803695, at *1. Addressing facts similar to this action, the Court explained that a stay was appropriate where the supplier's "Declaratory Judgment Action will likely simplify the issues for trial, and … no undue

prejudice to [the patentee] will likely result." *Id.* Indeed, Courts often find a stay of the first-filed action to be appropriate where that action is a customer suit and where the second-filed action is an action involving the manufacturer—even where those cases are filed in different district courts. The *Pragmatus* Court noted accordingly that the "first filed rule" and its "customer suit exception" are choice-of-forum doctrines that apply in instances "when *two federal district courts* are handling cases involving the same parties and issues," (*quoting Enzo Biochem, Inc. v. Calgene, Inc.*, No. 93–110, 1993 WL 266518, *2 (D. Del. May 18, 1993)), such that when "litigation [is] against or brought by the manufacturer of infringing goods[, it] takes precedence over a suit by the patent owner against customers of the manufacturer" (quoting *Katz*, 909 F.2d at 1464) (alterations added in original). But the Court went on to explain that, while those doctrines did not directly apply to the motion for stay in *Pragmatus* because—as here—both cases were pending before this Court, the reasoning behind those doctrines supported granting a stay of the customer actions. *Id.* The same is true in this case.

        In *Katz*, 909 F.2d at 1464, the Federal Circuit affirmed a district court's order enjoining a customer suit pending resolution of an infringement suit against the manufacturer. Underlying the Court's ruling was its recognition that litigation against or brought by the manufacturer takes precedence over a suit by the patent owner against customers. Citing *Codex Corp. v. Milgo Electronics Corp.*, 553 F.2d 735, 737-38 (1st Cir. 1977), the Court noted that, "at the root of the preference for a manufacturer's declaratory judgment action is the recognition that, in reality, the manufacturer is the true defendant in the customer suit," and that "it is a simple fact of life that a manufacturer must protect its customers, either as a matter of contract, or good business, or in order to avoid the damaging impact of an adverse ruling against its products." *Katz*, 909 F.2d at 1464. That is precisely what Oracle seeks to do here.

Decisions in this district have echoed the rulings and rationale of *Katz* many times.  For example, in *Ricoh*, 279 F. Supp. 2d at 558, the Court found that "[the patentee's] infringement claims against the defendants are fundamentally claims against the ordinary use of [the manufacturer's product]."  In granting a stay of the customer suit, the Court noted that "the California court's determination regarding infringement and validity of the '432 patent will efficiently dispose of the infringement issues regarding [the manufacturer's] customers in this case." *Id*. at 558.

Likewise, in *Commissariat A L'Energie Atomique*, the Court stayed cases against non-retailers and distributors of the accused product pending resolution of a suit involving the manufacturer.  2004 WL 1554382, at *2.  The Court reasoned that, "[b]ecause the manufacturers are intimately involved in the design, operation, and use of the accused LCD panels, they are in the best position to contest the validity and infringement of [the patentee's] asserted patents." *Id*. at *3.  The Court concluded that, if the manufacturers were "found to be not infringing, then there would be no need to proceed against the [customers]." *Id*.  Thus, significant judicial economy would be achieved by staying the case and first litigating the claims against the manufacturers.

The same was true in *Honeywell*.  There, the Court stayed a patent infringement case against the manufacturer's customers pending the outcome of an action involving the manufacturer itself. *Honeywell.*, 2005 WL 2465898, at *4.  The Court concluded that it was "unwise" to proceed with lawsuits against customers "when liability depends exclusively upon infringement being found as to an LCD component that the defendants do not manufacture and when at least some of the manufacturers of the LCDs are before the court and are willing to stand behind their products in this litigation." *Id*. at *3.

- 13 -

As shown below, all of the same considerations support a stay in this case.

**B.      Oracle's Declaratory Judgment Case Is The Right Case For Adjudication Of ADI's Claims Against Oracle's APEX Products**

As a matter of case management, a stay of this action is the most sensible and efficient course for resolution of the dispute.  Not only would a stay allow the parties at the center of this dispute (and best suited to litigate it) to proceed without unnecessarily involving nineteen customers, but it would streamline these proceedings at all phases from discovery to claim construction to dispositive motions to trial.  That a stay will cause no prejudice to ADI, as shown below, is even further reason that a stay should be granted.

**1.      Staying This Case Until The Declaratory Judgment Action Is Resolved Will Streamline This Case And Any Trial**

As noted above, one critical factor in the stay analysis is whether a stay would simplify the issues and trial of the case.  Here, as in many customer suits, there is little doubt that resolution of Oracle's declaratory judgment suit will simplify these proceedings and, depending on the outcome, may moot them altogether.

As explained above, the purpose of Oracle's declaratory judgment action is to obtain a decision on the merits of the dispute between Oracle and the patentee, without needlessly dragging Oracle's customers into the fray.

Resolution of Oracle's declaratory judgment action in lieu of this suit will not only allow for litigation between the proper parties but will avoid or significantly streamline adjudication of a cumbersome customer suit when it comes to discovery and other important milestones in the litigation such as claim construction, dispositive motions and trial.  Moreover, just as in *Pragmatus, Ricoh*, *Commissariat* and *Honeywell*, there is little doubt that the outcome of Oracle's declaratory judgment action will have a direct impact on this case.  For example, a

judgment that the Patents-in-Suit is invalid would eliminate ADI's claims altogether and would allow Oracle and its customers to rightfully continue their actions with respect to Oracle's products without the specter of ADI's allegations. Similarly, a finding that Oracle's APEX products do not infringe would be binding on ADI. Indeed, a judgment of invalidity or non-infringement would likely relieve this Court from adjudication of those claims against the Customers, or at least sharply narrow the disputed issues concerning those claims.[4] Even in the unlikely event that ADI prevailed in the declaratory judgment action and damages were awarded against Oracle, ADI cannot collect double damages for the sale and use of the same allegedly infringing products by both Oracle and its customers. Thus, an award of damages against Oracle should exhaust any remedy against its customers. *See, e.g.*, *Pragmatus*, 2012 WL 2803695, at *2 ("[I]f [patentee] prevails and [supplier] fully compensates [patentee] for its Customers' use of the [supplier's] technology, [patentee] would be barred from seeking further compensation from the Customers based on the same harm.") (citing *Glenayre Electronics, Inc. v. Jackson*, 443 F.3d 851, 858 (Fed. Cir. 2006)); *Delphi*, 2008 WL 2941116, at *5 ("Delphi as manufacturer is the natural defendant because any resolution vis-a-vis Delphi would be global as far as its PODs customers and, for that matter, [patentee] would be concerned.").

   This case presents compelling reasons why this customer suit should be stayed in favor of Oracle's declaratory judgment suit. A stay would allow for the most efficient and

---

[4] Of course, judgment in Oracle's declaratory judgment action would also protect Oracle's other customers from infringement allegations or licensing demands. This would avoid possible piecemeal litigation against Oracle's customers, which is both inefficient and, if allowed to proceed, creates a risk of inconsistent judgments on issues of infringement and patent invalidity. *See, e.g., Delphi*, 2008 WL 2941116, at *5 (noting that the "logic of the customer-suit exception applies well to this case" because, among other things, "[a]s a matter of judicial economy, global settlement is preferred over piecemeal litigation")

equitable resolution of the dispute surrounding Oracle's APEX products, and would allow the parties to litigate and the Court to resolve ADI's claims against Oracle's APEX products against the party best situated to address the issues of noninfringement and invalidity of the Patents-in-Suit—Oracle.

### 2.     A Stay Will Not Unduly Prejudice Plaintiff

Although the factors above weigh decidedly in favor of stay, the scales tip even further in favor of granting Oracle's motion when the impact of a stay on ADI is considered. Because ADI has no legitimate reason to sue Oracle's customers rather than Oracle itself, a stay of this action will not unduly prejudice or present a clear tactical disadvantage to ADI.[5]  If anything, a stay of this action will (as discussed above) "vastly simplify the issues and trial of the case" once the declaratory judgment action is completed, and in doing so, will benefit everyone involved, including ADI.  *Honeywell*, 2005 WL 2465898, at *4; *Pragmatus*, 2012 WL 2803695, at *2 ("[W]hile Pragmatus is of course entitled to make its own litigation decisions, I cannot help but think it would be more efficient for Pragmatus to have one case against a supplier than four cases against customers.").

### 3.     A Stay Is Warranted Because This Case Is In Its Infancy

Finally, a stay is strongly supported because this case is in its infancy.  Given the early stage of the case, before any discovery has been scheduled or a trial date set, neither the parties nor the judicial process will be prejudiced if this case is stayed and the declaratory judgment action goes forward in its stead.  *See, e.g.*, *Pragmatus*, 2012 WL 2803695, at *2

---

[5]   To the extent ADI perceives that it derives some increased litigation leverage from suing Oracle's customers and not Oracle itself, that leverage is not a legitimate or cognizable basis for it to avoid a stay of this action.

(granting a motion to stay—even where a Rule 16 conference and setting of a trial date occurred after filing of the motion—as "no discovery of any significance has occurred" such that "the proceedings are in their infancy").

## V.    **CONCLUSION**

For each of the aforementioned reasons, Oracle respectfully requests that the Court grant its motion to intervene and to stay this case.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Mary B. Graham*

Mary B. Graham (#2256)
Stephen J. Kraftschik (#5623)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
mgraham@mnat.com
skraftschik@mnat.com
   *Attorneys for Oracle Corporation*
   *and Oracle America, Inc.*

OF COUNSEL:

Jared Bobrow
Sonal N. Mehta
Andrew Perito
Justin M. Lee
WEIL, GOTSHAL & MANGES LLP
201 Redwood Shores Parkway
Redwood Shores, CA  94065
(650) 802-3000

September 20, 2012
6460173